# EXHIBIT H

| | |
|---|---|
| Park County District Court of Colorado<br>300 4th St, Fairplay Colorado 80440 | |
| Plaintiffs:<br><br>TINA SATCH;<br><br>R.W., a minor, individually and by and through his guardian and next friend, Tina Satch;<br><br>v.<br><br>Defendants:<br><br>BRISTLECONE MONTESSORI SCHOOL;<br><br>RUTHANN SHERRIER, individually and in her official capacity as Director of Bristlecone Montessori School; and<br><br>JESSICA TERRIZZI CALDWELL, individually and in her official capacity as Assistant Director of Bristlecone Montessori School | DATE FILED: August 30, 2019 2:16 PM<br>FILING ID: 61480766D7E7C<br>CASE NUMBER: 2019CV30064<br><br><br><br><br><br><br><br><br><br><br>▲ COURT USE ONLY ▲ |
| Igor Raykin, Esq., Atty Reg. # 43081<br>Gordon Westmont Atty Reg # 45087<br>Kishinevsky & Raykin, Attorneys at Law<br>2851 S. Parker RD., Suite 150, Aurora, CO 80014<br>Phone Number: 720-767-1846; 720-588-2096<br>Fax Number:  720-748-8894<br>E-mail:igor@coloradolawteam.com<br>        gordon@coloradolawteam.com | Case Number:<br>Division: |
| COMPLAINT AND JURY DEMAND | |

To the Park County District Court, State of Colorado:

COMES NOW, Plaintiffs Tina Satch and R.W., a minor, individually and by and through his guardian and next friend, Tina Satch; ("Plaintiffs"), and by and through their undersigned counsel hereby file this Complaint against Defendants Bristlecone Montessori School

("DEFENDANT BMS"), Ruthann Sherrier individually and in her official capacity as Director of Bristlecone Montessori School ("Defendant Sherrier"), and Jessica Terrizzi Caldwell individually and in her official capacity as Assistant Director of Bristlecone Montessori School ("Defendant Caldwell").

### Parties

1. Plaintiff R.W. at all times relevant to this complaint resided in Park County, Colorado. Plaintiff R.W. is a minor, under the age of 18 years old.

2. Plaintiff Tina Satch at all times relevant to this complaint resided in Park County, Colorado. Plaintiff Satch is Plaintiff R.W.'s mother and legal guardian.

3. Defendant Bristlecone Montessori School is a Colorado Nonprofit Corporation with an address of 272 N. Main St, Alma, CO 80420 and mailing address of P.O. Box 236, Alma, CO 80420.

4. , Defendant Ruthann Sherrier at all times relevant to this complaint, upon information and belief, resided in Park County, Colorado. Defendant Sherrier is the Director of Defendant Bristlecone Montessori School.

5. Defendant Jessica Caldwell, at all times relevant to this complain, upon information and belief, resided in Park County, Colorado and was the Assistant Director of Defendant Bristlecone Montessori School.

### Jurisdiction

6. Venue in the Park County District Court is proper pursuant to C.R.C.P. 98(c).

7. Jurisdiction is proper pursuant to C.R.S. 13-1-124(1).

8. The substance of the action underlying this suit occurred in Park County, Colorado.

**General Allegations**

9. Defendant BMS negligently failed to fulfill their duties to Ms. Satch and to six-year old R.W., Ms. Satch's child who was a student at Defendant BMS.

10. A nine-year old child ("S.O") attending Defendant BMS repeatedly bullied and sexually abused and assaulted R.W. on school property while school was in session.

11. These incidents took place from September 2018 to December 2018.

12. The incidents of physical bullying began in September 2018.  S.O. kicked and punched R.W. several times on different parts of his body, including his penis.

13. R.W. attempted to get help from Defendant Caldwell but was told to talk it out with the abuser.

14. Another incident in September involved S.O. grabbing R.W.'s face and pressing it against metal playground equipment until R.W.'s nose bled.  R.W. approached Defendant Caldwell for help.  Despite Defendant Caldwell's knowledge of previous incidents of bullying, R.W.  was again told to talk it out with his abuser, and was simply given a tissue for his bloody nose.

15. The bullying continued, and in November 2018 at a pre-Thanksgiving celebration S.O. punched R.W. in the testicles and pushed him down several times on the ground and would not let him up.  S.O. also trapped R.W. in a wooden log storage box.

16. A meeting occurred at the school after this incident between parents, including Ms. Satch, and school administrators, including Defendant Sherrier and Defendant Caldwell, but nothing was done to prevent further bullying.

17. Around this time the bullying got worse and developed a sexual element.  S.O. asked R.W. to join a group called the "Privates Club" and to show his penis.  When R.W.

refused S.O. punched him in the penis. R.W. then agreed to participate in the club fearing that S.O. would retaliate further if he refused, and fearing that no one would help him since his previous attempts to address S.O.'s behavior by reporting it to school officials had been dismissed.

18. Within the next two weeks the "Privates Club" had changed into the "Secret Privates Club" and S.O. told R.W. to join this club and rub penises together with S.O.  When R.W. refused S.O. grabbed R.W.'s arm, twisted it, and told R.W. that he would break his arm if he did not join the "Secret Privates Club".  R.W. agreed to join the club and rub penises together with S.O.

19. In addition, around this time S.O. brought in a book of pornographic material to school and showed R.W. the book.  This book showed pictures of sex acts and S.O. told R.W. that he wanted to do what was in the pictures.

20. R.W. also witnessed S.O. intimidating other children into the "Secret Privates Club".  R.W. witnessed S.O. and another student push a female child down on the floor in the school hallway, in front of the boys bathroom, and intimidate her into the "Secret Privates Club."  S.O. put his hand down the female child's pants.  R.W. then witnessed S.O. and the female child go into the boys bathroom for "Secret Privates Club" purposes.

21.  R.W. also witnessed S.O. intimidate the same female child into going into a shed on the playground during recess, and R.W. witnessed S.O. rub genitals together with her while in the shed.

22. A few days after this playground incident R.W. entered the boys bathroom to use the toilet but did not lock the door.  S.O. then entered the bathroom and locked the door behind him.

23. S.O. demanded that R.W. let him touch R.W.'s bum.  When R.W. refused, S.O. threatened R.W. with physical violence.  R.W. then agreed to let  S.O. touch R.W.'s bum.  S.O. stuck his finger into R.W.'s anus.  S.O. then spread R.W.'s anus and rubbed R.W.'s anus with his penis.

24. S.O. then penetrated R.W.'s anus with his penis.  This caused R.W.'s anus to bleed.

25. All of these incidents, including the bullying and the sexual harassment and assault, occurred on the playground during recess under school supervision, in the hallway in front of the boys bathroom, in the boys bathroom after lunch while both teachers were talking in the kitchen area of the class.

26. During the time of the incidents R.W. often came home to Ms. Satch with bruises and in a very angry mood.  R.W also had issues with acting out and not allowing the teachers to touch him.

27. Ms. Satch spoke to the Defendants about the bullying and the continuing harm to R.W.  Nothing was done, nor was teacher supervision increased.

28. Defendants were demonstrably aware that R.W. was having issues with S.O.  However, when Defendants became concerned with R.W.'s behavior they failed to examine whether the bullying R.W. experienced – of which they were aware – and their response to it could have contributed to R.W.'s struggles.

29. Instead, Defendants questioned Ms. Satch as to who was happening at home that could have made R.W. act out.

30. Defendants failed to examine what was occurring on Defendant BMS property during school hours and whether their levels of supervision were appropriate to keep students safe.

31. Defendants were aware that there were incidents of exposure in the school according the the Park County Department of Human Services (DHS) investigation of Defendant BMS.

32. During the DHS investigation, children confirmed to investigators that teachers did not supervise the children at Defendant BMS and that the teachers were either on their phones or in another room when incidents occurred.

33. The children confirmed there was very little monitoring of students.

34. Defendant Caldwell also confirmed to DHS investigators that there was minimal supervision of the children.

35. During the DHS investigation, Defendant Sherrier told investigators that the playground shed had always been locked and if the children wanted to get into the shed to get toys or equipment that they had to get the assistance of a teacher.

36. Defendant Sherrier also told investigators that Defendant Caldwell was aware of the incidents and that she had addressed them with the students.

37. However, Defendant Caldwell stated to DHS investigators that the shed had only been locked shortly before the DHS investigation and that previously the children had free access to it without a teacher being present.

38. Defendant Caldwell stated that she did not know why this had changed.

39. Defendant Sherrier throughout the DHS investigation was insistent that children are never unsupervised at Defendant BMS, however Defendant Caldwell stated that there are times when teachers are in the kitchen the children are unsupervised.

40. In fact, during the investigation itself the investigator observed two children standing on stools at the kitchen sink, washing dishes unattended while the teacher assisted other

children in the front of the class with their jackets, directly contradicting Defendant

Sherrier's assertion of constant supervision.

41. Because of these incidents R.W. has been psychologically and emotionally damaged and

has been seeing a certified play therapist.

42. Because of these incidents, R.W. displays high levels of emotional anger and confusion

in his interactions with others, including both adults and children.

43. Because of these incidents, R.W. is terrified of attending school, any school, and believes

that no matter where he goes to school teachers will not be able or willing to protect him

from physical and sexual abuse.

44. Because of these incidents, R.W. experiences severe stomach aches and loss of appetite,

physical symptoms which he was not experiencing before the abuse began.

45. Because of these incidents, R.W. goes around the house and locks every door and

window in the house before he goes to sleep out of fear that S.O. or others will come to

abuse him at home.

46. Defendant BMS and Defendant Sherrier have a history of failing to comply with

Colorado Department of Human Services ("CODHS") regulations.  Among other

numerous violations, in November 2016 CODHS found that Defendant Sherrier and other

employees were in violation of Code of Colorado Regulations 7.702.33(H) & (I) by

failing to complete training on child abuse prevention and how, where, and when to

report suspected or known signs of child abuse.  There is no showing that all paid staff

and volunteers at Defendant BMS ever received such training as required by CODHS.

47. As a result the Defendants' negligent behavior, Plaintiff suffered physical and emotional

injuries, all of which required medical treatment.

## First Claim for Relief: Breach of Contract Against Defendants Defendant BMS and Defendant Sherrier

48. Plaintiff incorporates all previous paragraphs as if they were fully reproduced herein.

49. In Colorado, a suit for breach of contract requires (1) the existence of a contract; (2) that Plaintiff performed his duties under the contract or that he was justified in not performing; (3) that Defendants failed to substantially perform their obligations under the contract; and (4) resulting damages. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

50. The enrollment agreement between Plaintiffs and Defendants is memorialized in the Defendant BMS Handbook and Enrollment Agreement ("Agreement").  Plaintiff Ms. Satch entered into an agreement with Defendant BMS to enroll and educate R.W. in exchange for Ms. Satch's work as a cleaner for Defendant BMS.  This contract was signed in the first year of the agreement and continued as an oral year to year contract, including in the time period at issue here, the first half of the 2018-2019 school year.

51. Ms. Satch fulfilled her duties under the contract and provided value and consideration to Defendant BMS through her cleaning services.

52. The Agreement binds Defendant BMS to certain duties towards enrolled students.  These include the duty to make children's safety a number one priority and for children to be under the direct supervision of an adult at all times, as required by Code of Colorado Regulations 7.702.21(G).  Defendant BMS also assumed the duty of "making sure each child is visible and safe" through teachers monitoring children as they are engaged in activities.  Further, Defendant BMS in the Agreement states they do not permit "teasing or threats" in the school environment.

53. Defendant BMS failed to perform their duties under the Agreement.  R.W. suffered continuous threats and physical violence during his time at school. R.W. was not under the direct supervision of adults and was physically abused on the playground.  R.W. was sexually abused on the playground and inside the school.  Defendants did not fulfill their promise to make sure R.W. was visible and safe through teacher monitoring.

54. As revealed in the DHS investigation, children were frequently unsupervised by any staff at all.

55. Because of Defendants' failure to fulfill their promises under the contract relating to child safety, R.W. was sexually harassed, assaulted, abused, and raped by another student. Plaintiffs have suffered financial, physical, emotional, mental, and educational damages because of this breach of Defendants' duty.

### Second Claim for Relief: Negligence against all Defendants

56. Plaintiff incorporates all previous paragraphs as if they were fully reproduced herein.

57. To prove a negligence claim, a plaintiff must prove (1) the existence of a legal duty of the defendant; (2) the breach of that duty by the defendant; (3) injury to the plaintiff; and (4) a causal relationship between the defendant's breach of duty and the plaintiff's injury. *See Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316, 1320 (Colo. 1992).

58. "A duty of reasonable care arises when there is a foreseeable risk of injury to others from a defendant's failure to take protective action to prevent the injury." *Id*.  "Colorado generally recognizes a cause of action in negligence where the defendant failed to take reasonably necessary steps to prevent foreseeable harm resulting from the intentional torts of others." *Harvey v. Farmers Ins. Exchange*, 983 P.2d 34, 39 (Colo. App. 1998).

59. Under the doctrine of negligence per se, a plaintiff can recover by demonstrating that the defendant violated a statutory standard and the violation caused the plaintiff's injuries, if the plaintiff is a member of the class the statute was enacted to protect. *Lombard v. Colorado Outdoor Educ. Center, Inc.*, 187 P.3d 565, 573 (Colo. 2008).

60. All named defendants violated Colorado Revised Statutes § 19-3-304 when in their positions as mandatory reporters under that statute they failed to report the allegations of child abuse reported by R.W. and Ms. Satch, as well as other parents.

61. This statute is designed to protect a class of individuals under the age of eighteen which Plaintiff R.W. is a member. C.R.S. § 19-3-304(2)(l) states that this statute applies to any "[p]ublic or private school official or employee" and requires that any person that the statute applies to "who has reasonable cause to know or suspect that a child has been subjected to abuse … shall immediately report or cause a report to be made" to county authorities or law enforcement.

62. The violation of this statute allowed for the abuse to continue and was the proximate case of the child's injuries.

63. The United States Supreme Court has explicitly recognized that schools may be under a duty to adequately supervise students in their charge and that failing to take action to prevent sexual assault can give rise to school liability for the injuries suffered by the student victim. *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.* 526 U.S. 629, 633 (1999).

64. The Colorado Supreme Court has recognized a common law duty of care to protect children even from acts of third parties "while students are in the school's charge."

*Jefferson County School Dist. R-1 v. Justus By and Through Justus*, 725 P.2d 767, 770 (Colo. 1986).

65. The Colorado Supreme Court has also held that "[w]here a person represents by word or act that he has done or will do something upon the performance of which he should realize that others will rely, he is liable for expectable harm caused by the reliance of others and his failure of performance, if his representation was negligently or intentionally false, or if without excuse he fails to perform." *Lester v. Marshall*, 352 P.2d 786, 791 (Colo. 1960).

66. Here, as a school with common law duties of care and as a party to the Agreement the Defendants had a legal duty to take care of R.W. both while he was on school property and during school hours and activities including outdoor recess.  Defendants breached that duty by not properly supervising the children under their care, especially S.O. and R.W.

67. Plaintiff was injured mentally, emotionally, and physically.  He was subject to aggressive sexual abuse and rape by another child while Defendant BMS had a duty to supervise both children.

68. There is a direct causal relationship between the Defendants' breach of duty and the Plaintiff's injuries.  Plaintiff was injured on school property, during school hours, and while the Defendants were under the duty of proper supervision.  Plaintiffs suffered extreme, life-changing injuries and medical, emotional, mental, and psychological damages as a direct result of Defendants' failure to properly supervise the children under their care and their failure to perform their duties.

69. Defendant Sherrier, Defendant Caldwell, and school staff are mandatory reporters of child abuse under Colorado law, yet they failed to take action when clear signs of abuse were present and when they were notified of abuse, both by R.W. and by Ms. Satch and other parents.

70. It is clear that Defendants noticed signs of abuse because they asked Ms. Satch and the parents of other children abused by S.O. what was happening at home.  Their obligation as a mandatory reporter is to report to the appropriate authorities when they suspect abuse, so that the authorities can investigate the matter, not accuse parents and at the same time ignore the abuse that was occurring at Defendant BMS.  They failed this duty.

71. In addition, according to Defendant Sherrier she and Defendant Caldwell were both aware of the incidents and Defendant Caldwell had addressed it in some fashion with the students.

72. This negligent action by Defendants caused severe psychological, emotional, and physical damages to R.W. and Ms. Satch.

### Third claim for Relief: Negligence Per Se against all Defendants

73. Plaintiff incorporates all previous paragraphs as if they were fully reproduced herein.

74. Defendant's negligent actions were in violation of relevant statutes of the State of Colorado and/or ordinances of Park County and therefore constitutes negligence *per se*.

75. As a result of Defendant's negligence *per se* Plaintiff suffered injuries and damages as more fully alleged above in this Complaint and Plaintiffs hereby claims for same.

### Third Claim for Relief: Negligent Infliction of Emotional Distress Against all Defendants

76. Plaintiff incorporates all previous paragraphs as if they were fully reproduced herein.

77. In order to prove negligent infliction of emotional distress, a plaintiff must prove that (1) defendant's negligence created an unreasonable risk of physical harm that (2) caused the plaintiff to be put into fear for his own safety, (3) that the fear resulted in long-term emotional disturbance, and (4) that the fear is the cause of damages to the plaintiff and plaintiff suffered physical injury. *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489 (Colo. App. 2011).

78. Here, Defendants were negligent in their supervision of the children.  S.O. was able to bully R.W., force him to join the "Privates Club" and "Secret Privates Club" using physical intimidation and threat, and sexually abuse him.  This all happened under the Defendants noses while they had the duty to properly supervise and care for the children at Defendant BMS including R.W.

79. This negligence created an unreasonable risk of physical harm to R.W. that led to him being bullied, sexually abused, and raped.

80. Because of this pervasive abuse caused by Defendants' negligence, R.W. was psychologically damaged and feared going to school and interacting with S.O. and the school staff who did nothing to help him when he was in need.  He also feared telling Ms. Satch and other authority figures about the abuse that he had suffered.

81. R.W. has been irreparably harmed by the fear he experienced as a six-year old going to school at Defendant BMS where he was prey to another child with no assistance from or supervision by Defendants.  The psychological harm from this fear and these incidents will be with him for the rest of his life.  R.W. has been seeing a therapist because of this situation, and fears going back to any school because he believes that school staff will be unable or unwilling to protect him.

82. R.W. experiences nightly terror when he believes that his abuser, enabled and protected by Defendant BMS and its staff, will come to his house.

83. The pervasive fear that R.W. experienced and continues to experience because Defendants' negligence and the subsequent abuse has caused significant emotional and psychological trauma and damages to Plaintiff.  Plaintiff was injured by being physically and sexually abused and anally raped.  Since this abuse he has experienced severe stomach aches and suffered loss of appetite.

## Prayer for Relief

WHEREFORE, Plaintiffs request that:

84. The Court award damages for breach of contract, including compensatory, general, and consequential damages, in an amount to be determined at trial;

85. The Court award damages for negligence, including compensatory, general, and consequential damages, in an amount to be determined at trial;

86. The Court award damages for negligent infliction of emotional distress, including compensatory, general, and consequential damages, in an amount to be determined at trial;

87. The Court award damages for psychological, emotional, and mental damages, pain and suffering, and punitive damages as may be just and proper;

88. The court award Plaintiffs costs of suit; and

89. Plaintiffs be granted such other and further relief as may be just and proper.


**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

s/ Igor Raykin
Igor Raykin, Esq., Att. Reg. #: 43081
Gordon Westmont, Att. Reg. #: 45087
Kishinevsky & Raykin, LLC Attorneys at Law
2851 S. Parker Rd., Ste. 150
Aurora, CO 80014
P: (720) 767-1846 | F: (720) 523-8135
E: igor@coloradolawteam.com
E: gordon@coloradolawteam.com
Attorneys for Plaintiffs